Okay, our fourth case of the morning comes in at P.L. 2513.15, Fayez Dahleh v. Minnesota Life Insurance Company. Mr. Halliser, good morning. I hope I pronounced your client's name correctly. Glenn Halliser for Appellant Fayez Dahleh. Mr. Dahleh seeks a remand for a declaratory judgment that his life insurance policy remains in full force in effect. How is Mrs. Perlitz doing? To my knowledge, Judge, she's fine. Glad to hear it. What was Plaintiff's relationship with her? I believe the evidence in the record is that he was both a creditor and a friend. He had some sort of social relationship with her, and he also provided her financial assistance. And was he telling Minnesota Life that she was his mom? That she was his mom? Yeah. That I am not aware of, Your Honor. I'm not aware of a citation of the record for that, but if Your Honor's asking, there must be a basis for it. There is. Thank you. Mr. Dahleh's attempt to make a payment 11 days after the grace period expired was timely, pursuant to the 6-month moratorium on forfeiture contained in Section 234 of the Illinois Insurance Code. In order for Section 234 to apply, the initial question is whether Mr. Dahleh's payments qualify as premiums within the meaning of Section 234. The statute itself applies to any premium, installment, interest, or other portion thereof that is required, underscore required, by the terms of the policy to be paid. Here it is undisputed that Mr. Dahleh's payments were required to maintain the policy in force. In other words, he only paid when Minnesota Life required payments to maintain the policy. There is the option for planned premium payments to build equity in the case, I'm sorry, under the policy. However, the record is clear that when Mr. Dahleh acquired this policy, the policy was on a zero planned premium basis. In other words, he was acquiring the policy, he was not making any planned premium payments to build equity, he would only make payments when necessary to maintain the policy in force. But when you look at the policy and we see that there's what the policy calls a monthly policy charge against the accumulation value, and part of that monthly policy charge is covering the cost of insurance or the maintenance of insurance. How is that not a premium just within the plain meaning of the term premium? It is a premium. We are arguing that it is a premium. But it's monthly. I think that's my reading of it. Just plain meaning, it looks like a premium, but then you hit the statutory point about if the premium is charged on a monthly basis and there's a monthly charge here, how is 234 even going to apply? The policy makes clear that it's the payment from the insured that constitutes the premium. It says if the accumulation value is insufficient to cover the monthly charges on any monthly policy anniversary, the 61-day grace period begins. You, meaning the insured, may pay premiums during this grace period to cover the insufficiency and to continue your policy in force. And that's why the district court, applying the common definition of the word premium, properly determined that Mr. DeLay's payments were premiums under the common meaning of the term because it was the payments from Mr. DeLay that served to move this policy forward for some period of time. So you think that what we need to do is look at the application of 234.1 and 2 to the specific instance of how it applies when there is insufficient accumulation value in one of these flexible life policies like this. As opposed to, because the statute's obviously not written for a fact pattern, right? It's meant to apply across policies. It sure seems like it's written more with term policies in mind than whole life policies. But nonetheless, we're here. We're here. The insureds in Louisiana face the same issue in two federal cases. If you look at the, the reason I started with that, because if you look at the general operation of the policy, just month to month, looks like, I mean, by its terms it says there's something called a monthly policy charge. And the monthly policy charge will, among other things, cover the cost of insurance month to month, cover the risk that's being insured. Yes, Your Honor, but that's an internal process. We are going to, the insurer is looking at the accumulation value every month. There could be, there could be a planar issue. But the accumulation value, a policyholder has equity in it and then it's reduced month to month. Correct. So it's the equivalent of a payment, isn't it? Section 234 is intended to warn the insured of the consequences of nonpayment. In this case, the only, the only warning that Mr. DeLay would receive would be, you've got, you have insufficient accumulation value in your account. You need to make a premium payment and it needs to be a three month payment. You need to make that payment to avoid the consequences of forfeiture. So, can I ask you, I share Judge Scudder's concerns about, that the monthly charges sure look like a premium to me, but I understand other people might disagree. But under your theory of applying Section 234, when did the grace period start here? The moment of default? It's, it, that's correct. It starts on the policy, monthly policy anniversary. In this case it was the 10th of the month. Okay. So, a payment is not made when due. Grace period starts. As I understand the operation of 234, it requires this warning notice at least 15 days before the grace period starts. So, you're asking us to interpret the statute to require a notice, warning of default and the need to cure it, at least 15 days before a default occurs. Is that right? Yes, Your Honor. I would take issue, Your Honor said a payment when due, but... The 10th of the month. That's correct. Minnesota Life looks at the, looks at the accumulation value on the 10th of the month. It determines that there's insufficient accumulation value. And at that precise moment, a payment is due. And Your Honor's asking, how can they go backwards 15 days and serve the notice? Right. It's abundantly easy for them to do so because they have all the information they need to do that. So, they're supposed to warn you that you're in default before you're in default. That's exactly right. The way this policy is structured... That's a little odd. Well, the federal courts, as they said in the Turner case in the Western District of Louisiana, this is, this is a fairly new issue. They have the same Section 234 type statute with the same material elements. And we have to figure out how to proceed. But standing here today, I find it very difficult to presume that the Illinois legislature, in enacting Section 234, intended to exclude flexible premium policies from its scope. There's no indication of that, no evidence of that, no reason to presume that. Well, what do we, what do we make, what do we make of the exclusion for policies with monthly premiums? Well, getting to that, and, and I'll cite the Incandela case just to start in answer to Your Honor's question, because that's a, that's a good compare and contrast case. Incandela was actually cited by Minnesota Life in support of their position. They cited the case and said, this case stands for the proposition that flexible premium policies do not fall under the statute due to the monthly exclusion. We attach a copy of the actual Incandela policy to our reply brief and ask the court to take judicial notice of it. And Incandela makes clear that that policy is very different than this one. In Incandela, the payments, the value, any sort of internal computations, payments were due from the insured every month. And if there was a deficiency, just like here on that, on the date of that, that default, where accumulation value is insufficient, in, in Candela, the policy only required a quote, sufficient amount, unquote, to make up the deficiency. Not three months, as it is the case here, but one month. Why does that make a difference? Because it takes, the fact that Minnesota Life requires three months of payments, takes the, the exclusion for monthly or shorter payments away. Well, that, that only applies, though, in case of a default, right? The three months worth of payments. Well, it's, they're calling it a default, but it's also the due date. I, I, it's, it's the way they structured their policy, but section... If you miss a payment, and to keep the policy in force, you gotta come forward with three months worth of money, right? But they haven't missed a payment, Your Honor, and the reason they haven't missed a payment is endorsed on the policy, on the face of the policy, is the fact that my client will not be making any planned advance payments. He will only be making payments in response to notices he receives from Minnesota Life. And Minnesota Life is only going to send notices on that anniversary date. So they call it a default... But it could be any month, right? Any, the tenth of any month where the policy, where the accumulation value account is short, right? Well once that happens, it's not going to happen again for three months, because they're going to send a notice requiring three months of payments. So unlike in Candela, here, if the anniversary date arrives, and there's an insufficient payment, insufficient value, they send the bill for three months. If you pay two months, your policy's forfeited. It has to be a three-month payment. Now, speaking of a notice, Judge Daniel didn't address your argument as to the notice needing to be issued 15 to 45 days before the start of the grace period. It seems to me that there's an explanation for that, which is that the argument was only made in a footnote in response to Minnesota Life's summer judgment motion. So I've been sitting here wondering why that whole argument isn't waived. Your Honor, we made the argument in our summer judgment memorandum. I actually brought the page. It's not a lengthy argument, but it has its own heading. It's not lengthy because it simply articulates, here's the requirement. They breached the obligation by sending it on the first day of the grace period. But it's fully addressed in our summer judgment memorandum, and I can, when I come back and reply, I'm glad to provide the site. Okay, I'd appreciate that. You want to save the remainder of your time? Yes, thank you. Okay, you're quite welcome. Is he hearing the morning? Good morning. Jacqueline Herring on behalf of Minnesota Life Insurance Company. I'd like to pick up on the court's first concern. This is clearly a policy that's payable monthly. Every month there are monthly charges that are assessed. The one consistent charge listed in this policy is that every month you have to pay your monthly assessment, and it's assessed in advance on the monthly policy anniversary. So that occurs... May I just get something clear? I know I'm interrupting at a terrible time, but when the accumulation value of the policy first became insufficient to cover the monthly costs of insurance, did Minnesota Life begin invoicing Mr. Dalla on a monthly basis, or did it otherwise notify him that going forward he was now required to submit monthly payments covering the cost of insurance? And if not, I'm wondering why we should treat this as a policy requiring payments monthly, such that it was exempt from Section 234. The policy itself requires a monthly payment. What the court just referred to is how you correct a default in payment. The payment itself is required on a monthly basis. If and when you miss a monthly payment because the accumulation value is insufficient, there's a means to correct that default, but it doesn't change the fact that the payment remains a monthly payment. Assuming that you correct your default and the policy continues, because of course if you don't correct the default within the grace period, the policy would end. It would that the policy actually goes into default, and that can be corrected during the grace period, but it doesn't change that this is still a monthly payment that's required. I understand the point, but I guess I'm also troubled by the problem that the policy itself seems to distinguish between these monthly charges on the one hand and premiums on the other. So we seem to be having to, your theory seems to require those words to change meaning. And I think that the policy does draw those distinctions, Your Honor, because any amount that's placed in this policy is called a premium, and some of that can go into the investment accounts, and some of that ends up staying to cover those policy charges. So I do think to that extent, but when you look at what this statute applies to, it's intended not to apply to payments that are required on a monthly basis. And the reason for that is once you start giving notice 45, 31 days in advance of a monthly payment, then things just start overlapping each other, and it's a problem. And that's another reason why it becomes problematic with this particular monthly payment, because at the time leading up to this December 10th default, the only amount that's due on December 10th is the monthly amount. So notice can't be given in advance of December 10th that as of February 9th, you're going to owe three months, because you don't owe three months until you're in default. The only thing that's ever owed is that monthly payment until you cross over to being in default. Once you're in default, the means to cure that is different than the normal functioning of the policy, but the policy itself requires every single month that those monthly charges be paid, and they're assessed in advance on that monthly policy anniversary date. Can I ask you, Ms. Herring, to explain to us how you think the statute would work if one annual premium is due on this policy? Or make it a simple case, just a term policy with one annual premium? Yes. Let's assume the annual premium is due January 1st. So what's supposed to happen is then 15 to 45 days before January 1st, someone gets a notice in the mail that says you owe us $10,000 as of January 1st. It's going to cover you from January 1st to December 31st. You need to make that payment by X date. No grace period starting yet, right? Right. Okay. And then what? Yes. And then if the payment is not made on January 1st, well, I would assume that the notice, actually, let me back up, the notice of the payment is going to tell you when your grace period ends. That's how I've seen them. So in essence, the annual bill has to be the notice that complies with 234? Yes. With all of the warnings of termination and forfeiture and so on? Yes. Is it kind of, here's what you owe, and if you don't pay it, then you've got kind of a grace period that kicks in? Yes. But you'll have a grace period of X days or months from January 1st. Yes. And it's typically, I think the statute for life insurance requires 31 days, and 31 days is a typical time period. I think sometimes that's varied a little bit depending upon the term that's being covered. But yes, that's what you're typically going to see. Do you all see a lot of situations like this where investors have bought insurance policies and then kind of skeet at the edge of default? When investors buy them, that is what we see. Can I ask you a question? It's the kind of square peg, round hole question that Judge I think I follow every argument you make in your brief except one. And the one that I don't follow is the point about the 15 to 45 day notice, how the notice here complied with that requirement. And the reason I say square peg, round hole is for the same reason that was implicit in his question. I don't know how that is to be administered in a situation like this. But when you just look at the fact pattern, it sure does not look like you set it out at least 15 and up to 45 days ahead of time. Forget whether it's right or wrong. What's the argument? The argument was in response to what counsel raised, that if we're going to be looking at this February 9th date as the date the payment is actually due, what the statute requires is the date before the payment is actually due, you need to give your notice 15 to 45 days in advance. And that's part of the problem I've got with the monthly payment. But that's a response to the point he's making. We know that the payment was due on December 10th of 21, right? Yes. Okay, so the only way that you can comply is to rewind 15 to 45 days before that date. And we know as a matter of fact that there was no notice go out. That's correct. But you've got a whole bunch of other arguments. Yes, and if we all agree that December 10th is in fact the operative date, then that's a monthly date that wouldn't require the notice. And I think that's why it ends up being... I'm not arguing that the notice that went out occurred 15 to 45 days before December 10th, if that's the court's question. I was trying to address the concept of if we're going to allow... That's not what the statute requires, even though it's odd? It is what the statute requires, but not on a monthly payment. And that's why, and I'm not explaining myself very well, I'm not arguing that the 15 to 45 days occurred before the December 10th payment. What the argument was intended to be is if you buy into plaintiff's argument that the only thing required is the February 9th payment, that 15 to 45 days before the February 9th payment was when the notice went out. That's how you're interpreting due and payable? Based on their argument, yes. Okay, I got it. Because again, we don't agree that February 9th is the correct date, but if that is going to be viewed as the operative due date versus the December date, then it's within that 15 to 45 day window of the February 9th due date. And that's again sort of the problem with addressing it in that way, because that February 9th payment isn't a payment that's required by the policy, that is the payment that is fixing your default. The payment that was a monthly payment on December 10th, this February 9th payment is how you cure once you're already in default, once that grace period has already started. And the statute does not require 15 to 45 day notice of every monthly payment. That's why the monthly payment policies are exempted from the statute, because it does create that problem with overlapping. And again, the purpose of the statute is so that when someone who has their annual premiums, they don't just forget and then their policy immediately lapses. But if you're paying on a monthly basis, you don't need a 31 day reminder that as you're paying today, you got another one in 30 days, you got another one in 30 days. Or if you're doing a 45 day reminder, then you're giving notice of a payment that's after the next payment that's even coming due. So it doesn't make sense, and that's why the statute specifically exempts the monthly payable policies, which this is one of those policies. It's very, very clear in the policy that charges that are required are required to be paid on a monthly basis assessed in advance on the monthly policy anniversary. The statute simply does not apply to this particular policy. He was given the opportunity to cure his default in payment, and he did not pay before the February 9th due date. And the policy, therefore, terminated as of that date. Before your time is up, I don't know that this is a core issue, but can I just confirm, separate and apart from the deposition testimony that I think it's the son, somebody named Gus? It's his son. Okay. Gus Dalla? Dalla. Okay. Separate and apart from his testimony that he made a payment, his statement that he made, is there any evidence at all of a payment being made? Were there copies of check registers? Nothing. Copies of cleared checks and a gap in the cleared checklist or something like that? Anything? Absolutely nothing at all. He couldn't even say whether he supposedly sent the check from California or from Illinois. So absolutely no indication that any payment was paid other than, yes, he did testify that a payment was made. And they had on... That one was mailed. That one was mailed. And on this kind of skating, investor skating the line point, these folks had been right up, they'd been in grace period payment mode for a while, right? Yes. And somehow, some way during the grace period, they made a payment, whether they did it by wire or check or somehow they paid. They never paid by check. It was always either a telephone call or an EFT online payment. Okay. There was never a prior payment. The family was aware of how to pay? Yes. And he would typically call to say, hey, I made an online payment yesterday. Did you get it? Is the policy still in effect? Okay. Is that part of the record or are you just saying that? That's in the record. Okay. How many times did that occur? Several. I know in the brief, I only went back to, I think, 2020 and 2021. But on page 13 of our brief, I've got a chart that lays out 1, 2, 3, 4, 5, 6, 7 different dates. The first of which is December 10 of 2019 and then three dates in 2020, three dates in 2021. Those payments were all made either by telephone or online. And other than the September 10th due date, the payment dates were the last day or a day or two before the last day. And we laid that out in the chart. When you say by telephone, do you mean that he would say, this is my MasterCard, charge it? Or I'm not, how do you do it by telephone? Yes. Gus would call, the son Gus would call. He would say, my name is Faiyaz Dele. My date of birth is XYZ. And here's how I'd like to make a payment on this policy on which I am the owner. So the son would call and represent himself to be Faiyaz Dele. And then yes, would make the payment by telephone. But with what? Oh, yes. A credit card or an EFT. I don't recall. So I don't want to say one or the other. But yes, you can do an EFT. Here's my bank account information. And you can take it directly from my bank account. I believe these were EFTs and not credit cards. And that's more typical. Someone calls up with their bank account and that's how it's done. Or actually, online is probably the most typical. But when you're on the last day, if you do it by phone, then you've got a person who can confirm for you, yes, we got that payment and it was done. Thank you. So this policy terminated by its terms on February 9th of 2022. And the district court correctly entered judgment for Minnesota Life, declaring that the policy is terminated. Thank you. You're quite welcome. I think you had some time left. Judge Rover, in response to your question about raising the 15 to 45 day issue in our summary judgment memorandum, it's document number 35, page 11. Thank you. The heading is subsection B. Taking one of the latter points first, we don't intend to argue the factual issue rising from my client having mailed the check. However, we'll rely on the briefs. However, counsel says there was no evidence of payment in response to a question from the court. There was a specific question about a statement with a gap in checks that may or may not have been produced. And she said it had not been. There was a statement showing a gap in the check sequence that was produced. Well, according to his testimony, right? I don't want to get... I think this is a side issue. Well, you've raised it. Yes. Where did you tell the district judge this was a reason to deny summary judgment? We didn't address this at all. We didn't address this issue at all because Minnesota Life didn't raise it. In our papers, we took the position this was a factual issue, so we were not seeking summary judgment on it. That's not my question. Where did you tell the district judge that a factual dispute about whether this payment had been made and received required denial of summary judgment? We didn't do that other than to raise the issue in our statement of material facts. Okay. I didn't see it in your brief. You're telling me it's not there. Thank you. And there was no response to that is what you're saying. Correct. It was not raised. So Minnesota Life was the party seeking summary judgment on the issue of the mail check. We were not seeking summary judgment in our favor. We felt it was a factual dispute. Minnesota Life, they recited in their statement of facts that they had not received the check, but they never made any argument whatsoever in their papers that they should prevail on summary judgment on that issue, so we didn't respond to it. Okay. Counsel said several times that the policy requires monthly payments. There's nowhere that this policy requires monthly payments. It's only three-month payments that's required. I believe my time is up. Okay. Very well. Thank you. You're quite welcome. Mr. Heilizer, thanks to you. Ms. Herring, thanks to you. We'll take the appeal under advisement.